UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
GENNARO RITIENI,

                                Petitioner,

      -against-                            **MEMORANDUM OF DECISION AND ORDER**

UNITED STATES OF AMERICA,              09-CV-5332 (ADS)

                                Respondent.
---------------------------------------------------------------X

**APPEARANCES:**

**JEFFREY A. RABIN, ESQ.**
Attorney for the Petitioner
16 Court Street, Suite 3301
Brooklyn, New York 11241

**LORETTA E. LYNCH, UNITED STATES ATTORNEY**
**EASTERN DISTRICT OF NEW YORK**
271 Cadman Plaza East
Brooklyn, New York 11201
      By: SreeVamshi C. Reddy, Assistant United States Attorney

**SPATT, District Judge**.

      Presently before the Court is Gennaro Ritieni's ("Ritieni") petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255. Ritieni requests that the Court vacate, set aside, or correct his sentence because his counsel, Anthony La Pinta, was ineffective in failing to object to purported errors contained in the Presentence Investigation Report ("PSR"). For the reasons discussed below, Ritieni's petition is denied.

## I. BACKGROUND

Ritieni worked as an office manager and practitioner for Hanger Orthopedic Group, Inc. ("Hanger"), one of the leading providers of orthotic and prosthetic services and products. In his role as a practitioner, Ritieni would measure patients for various types of medical equipment, including braces, shoes, and limb replacements. Before reimbursing the cost of products and services furnished by Hanger, various health care benefit programs would require either a certificate of medical necessity or a valid prescription, signed by an authorized medical provider, affirming that the equipment prescribed was medically necessary for the patient.

According to the Information, Ritieni would take blank prescription forms, fill them in with the equipment to be ordered and then forge the signature of the patient's doctor. In some cases, the doctor had not seen the patient for whom the prescription was written. In other cases, where the doctor had prescribed certain equipment, Ritieni would include additional equipment on the prescription form that had not been prescribed. The benefit programs made payments to Hanger in reliance on Ritieni's false prescriptions and certificates of medical necessity.

On February 14, 2006, Ritieni waived indictment and was charged in a single-count Information with making false statements in relation to health care benefit programs, in violation of 18 U.S.C. §§ 1035(a)(1) and 1035(a)(2). Pursuant to a cooperation agreement with the Government, Ritieni pleaded guilty to the one-count Information on the same day.

The United States Probation Department ("Probation") issued a PSR on December 4, 2008. Probation calculated Ritieni's total offense level to be a level 13, and determined that he fit into Criminal History Category II. The total offense level included a two-level enhancement, based upon Probation's recommendation that Ritieni abused a position of trust within the meaning of U.S.S.G. § 3B1.3. The resulting Guidelines range was 15 to 21 months.

Ritieni appeared before this Court for sentencing on August 14, 2009. Consistent with its usual practice, the Court inquired of both Ritieni and La Pinta whether they had reviewed the PSR. The Court also inquired into whether the PSR contained any errors. Both Ritieni and La Pinta confirmed that they had reviewed the PSR and stated that it did not contain any errors.

During the sentencing, La Pinta stressed that although Ritieni fell into Criminal History Category II, his prior convictions were for "petty offenses" and that he had very limited involvement with the criminal justice system. La Pinta pointed out that Ritieni had taken responsibility for his crime and noted that his substantial cooperation with the Government led to the arrest and conviction of another individual. In light of these factors and Ritieni's close relationship with his children and elderly parents, La Pinta requested that the Court impose a non-custodial sentence. Speaking on his own behalf, Ritieni also asked the Court to consider his family ties and personal characteristics. In addition, the Government emphasized Ritieni's substantial assistance.

The Court sentenced Ritieni to five months imprisonment and a three-year term of supervised release. Ritieni's sentence also included restitution in the amount of $37,212.88. Ritieni filed a timely notice of appeal. However, on October 21, 2009, he moved in the Second Circuit to stay the appeal during the pendency of the instant writ. Ritieni is currently scheduled to surrender to the Bureau of Prisons on August 5, 2010.

## II. DISCUSSION

**A. Whether Ritieni Waived His Right to Appeal Errors in the PSR**

As a threshold matter, the Government argues that Ritieni waived his right to challenge perceived errors in the PSR because he failed to object to the purported errors at the time of his sentencing. Ritieni counters that the merits should be reached on collateral review because the

basis for his petition is that counsel was constitutionally ineffective in failing to object to these errors. Although it is arguable that Ritieni has defaulted on at least some of the claims he now raises, the Court finds that his petition should be addressed on the merits. In doing so, the Court has no difficulty in determining that Ritieni's petition must be denied.

**B. Whether Ritieni's Counsel Provided Constitutionally Ineffective Assistance**

Under the well-established Strickland standard, a claim of ineffective assistance of counsel requires a showing that: (1) counsel's performance fell below an objectively reasonable standard of performance; and (2) the deficient performance prejudiced the outcome of the proceeding. Bierenbaum v. Graham, 607 F.3d 36, 50 (2d Cir. 2010) (citing Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). To meet the first prong, Ritieni must demonstrate "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. To satisfy the second prong, Ritieni "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. In this context, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

Here, Ritieni alleges that La Pinta was constitutionally ineffective because he failed to object to: (1) a two-level enhancement to the offense level based on Probation's finding that Ritieni had abused a position of trust under U.S.S.G. § 3B1.3; (2) Probation's determination that he fit into Criminal History Category II; (3) the period of loss referenced in the PSR; and (4) statements in the PSR concerning the income he earned from Hanger. The Court will address each of these alleged errors in turn.

4

### 1. The Abuse of Trust Enhancement Pursuant to U.S.S.G. § 3B1.3

The Court increased Ritieni's base offense level by two levels because it believed that his crime involved the abuse of a position of trust under U.S.S.G. § 3B1.3. Ritieni claims that the enhancement should not have been applied in this case and that La Pinta was ineffective in failing to object to the enhancement.

U.S.S.G. § 3B1.3 provides for a two-level enhancement where "the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense . . ." The phrase "public or private trust" refers to a position "characterized by professional or *managerial* discretion." U.S.S.G. § 3B1.3 app. n.1 (emphasis added). According to the Commentary "[p]ersons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature." U.S.S.G. § 3B1.3 app. n.1. "For this adjustment to apply," the Government must show that "the position of public or private trust . . . contributed in some significant way to facilitating the commission or concealment of the offense (e.g., by making the detection of the offense or the defendant's responsibility for the offense more difficult)." Id.

In the Court's view, the abuse of trust enhancement is clearly applicable in this case. In addition to being a licensed orthotist, Ritieni also served as the business manager of Hanger's West Hempstead office. Ritieni has failed to raise any argument that would rebut Probation's common-sense finding that he acted in these capacities with the kind of discretionary authority contemplated by U.S.S.G. § 3B1.3.

It is also beyond serious dispute that Ritieni's exercise of this authority played a crucial role in the crime. As the Government points out, Ritieni effectively acted as a liaison between the doctors and Hanger's billing department. By virtue of his position, Ritieni was able to falsify

5

prescriptions and certificates of medical necessity. The benefit programs that were defrauded relied upon these falsified documents in reimbursing Hanger for products and services. Under the circumstances, the Court is hard-pressed to understand how any lawyer could have successfully argued that Ritieni did not abuse his position in such a way as to facilitate the crime.

**2. Whether Ritieni Fits Into Criminal History Category II**

Probation recommended that, in light of a prior arrest and conviction for driving while impaired, Ritieni fell into Criminal History Category II. Ritieni claims that La Pinta should have challenged this determination because he believes the conviction was for a "minor traffic infraction" that was not properly considered in computing his criminal history.

Ritieni is correct that "minor traffic infractions" are not to be counted in computing a defendant's criminal history. See U.S.S.G. § 4A1.2(c)(2). However, as the Government points out, Second Circuit precedent and the Commentary to § 4A1.2 make clear that a conviction for driving while impaired is not the sort of "minor traffic infraction" envisioned by § 4A1.2. In United States v. Moore, 968 F.2d 216 (2d Cir. 1992), the Second Circuit determined that a conviction for driving while impaired under New York law *should* be considered in determining a defendant's criminal history category. In reaching this decision, the Second Circuit relied upon the Commentary to § 4A1.2.

Application Note 5 to U.S.S.G. § 4A1.2 specifies that "[c]onvictions for driving while intoxicated or under the influence (and similar offenses by whatever name they are known) are counted" in computing a defendant's criminal history. U.S.S.G. § 4A1.2, app. n.5. In fact, Note 5 unequivocally states that "[s]uch offenses are not minor traffic infractions within the meaning of § 4A1.2." Id. In light of the fact that Ritieni's conviction for driving while impaired was properly considered in computing his criminal history, it is clear that La Pinta did not err in

failing to object to his criminal history calculation.

In the alternative, Ritieni contends that La Pinta was ineffective because he failed to argue under U.S.S.G. § 4A1.3(b)(1) that his criminal history category substantially overstated the seriousness of his criminal history. However, although La Pinta did not specifically invoke § 4A1.3(b)(1), he did make the case that Ritieni had a limited criminal history. In particular, La Pinta pointed out that his conviction was for the "petty offense" of driving while intoxicated and also asked the Court to consider that his client did not have "extensive involvement with the criminal justice system." Rabin Aff., Ex. B. at 5-6. On this record, the Court is convinced that La Pinta's advocacy did not fall below an objectively reasonable standard of performance.

Even if Ritieni believes that La Pinta should have pressed this issue more forcefully, his failure to so did not prejudice Ritieni. After hearing La Pinta's presentation, the Court explicitly recognized that Ritieni had only a "minor" criminal history. Id. at 10. In other words, the message that Ritieni expected La Pinta to convey was clearly heard and considered by the Court in determining the appropriate sentence.

Ritieni also contends that La Pinta should have sought a non-Guidelines sentence. However, this argument is easily disposed of as the sentencing transcript reflects that La Pinta *did* ask the Court to impose a non-Guidelines sentence. In particular, La Pinta noted that the applicable Guideline Range was 15 to 21 months, but requested that the Court impose a non-custodial sentence in light of Ritieni's substantial cooperation and close ties to his family. Rabin Aff., Ex. B. at 5-6.

### 3. The Period of Loss

The PSR states that between January of 1998 and June of 2004, nine health care benefit programs sustained losses totaling $45,006.96 as a result of Ritieni's crime. Ritieni argues that

La Pinta erred by not challenging this loss period and maintains that his failure to do so resulted in an erroneous Guideline level computation and restitution figure.

Ritieni claims that he was working for a company called NovaCare when it was acquired by Hanger in July of 1999. Ritieni points out that he did not became an "actual payroll employee" of Hanger until 2001. Ritieni Aff. at ¶ 9. As a result, Ritieni contends that the period between January of 1998 and December 2000 should not have been considered in computing the loss figure because he was not on Hanger's payroll during this timeframe.

The Court is unable to perceive why La Pinta should have been expected to correct this alleged error. Ritieni himself acknowledged during his plea that he worked as an office manager for Hanger from January of 1999 to June of 2004. Ritieni Aff. at ¶ 9. Ritieni has since discovered this purported factual error and now claims that La Pinta was ineffective in not correcting the record.

However, even assuming that La Pinta's failure to correct his client's own factual error could serve as the basis for an ineffective assistance of counsel claim, Ritieni makes no convincing effort to explain why he should not be held responsible for all of the fraudulent claims submitted during this period, regardless of whether he was acting as an employee of Hanger or an employee of another company owned and operated by Hanger.

**4. Statements in the PSR Concerning Ritieni's Income**

Ritieni contends that La Pinta was ineffective in failing to clarify a discrepancy between his self-reported salary and the income listed on W-2 forms he submitted to Probation.

In particular, Ritieni states that he informed Probation that he received a salary of $90,000 from Hanger in both 2002 and 2003. However, the PSR noted that, according to W-2 forms provided by Ritieni, he actually earned $163,7831 in 2002 and $183,680 in 2003. At

Ritieni's sentencing, the Court noted this discrepancy in his reported income:

> the defendant said he earned $90,000 at [Hanger] but his W-2 was significantly greater. In 2003, $183,000. In 2002, $163,000. I don't know about these income tax returns. He says he filed them. I accept what he says.

Rabin Aff., Ex. B. at 10. Ritieni argues that La Pinta should have clarified that the additional earnings were bonuses. However, as is evident from the sentencing transcript, the Court accepted Ritieni's explanation of the discrepancy. Therefore, even assuming that it was error for La Pinta not to have explained the discrepancy, this issue played no role in the Court's sentencing determination.

### III. CONCLUSION

For the foregoing reasons, Ritieni's motion to vacate, set aside, or correct his sentence, is denied.

Dated: Central Islip, New York
July 7, 2010

       /s/ Arthur D. Spatt
       ARTHUR D. SPATT
     United States District Judge